# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

UNDER SEAL

Plaintiff,

v.

UNDER SEAL

Defendants

**FILED UNDER SEAL**

**COMPLAINT**

DEMAND FOR JURY TRIAL

31 U.S.C. §§ 3729–3733
18 U.S.C. §§ 1961-1968
15 U.S.C. §§ 1-38
22 U.S.C. § 2778
22 CFR §§ 120-130
50 U.S.C. § 2410
22 U.S.C. § 401
47 U.S.C. §§ 2.1-1305
18 U.S.C. § 2512
19 U.S.C. §§ 1709-3808
18 U.S.C. § 549
18 U.S.C. § 371
18 U.S.C. § 1001
18 U.S.C. § 1031
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 1956
18 U.S.C. § 1510 – 1513

# **FILED UNDER SEAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

11cv 11458

**UNITED STATES OF AMERICA**
*Ex rel.* **JAMES M. ATKINSON, and**
**JAMES M. ATKINSON, individually**

Plaintiff,

v.

RESEARCH ELECTRONICS
INTERNATIONAL, LLC; A AND L
ENTERPRISES; THOMAS H. JONES;
BRUCE BARSUMIAN; LEE JONES;
KIMBERLY JONES; ARTURO DIAZ
(aka: ART DIAZ); MICHELLE GAW;
DARLENE JONES (aka: LISA
JONES); CLARENCE L. JONES, JR;
TRISH WEBB; ARLENE J.
BARSUMIAN; NICOLE RODGERS;
PAMELA MCINTYRE; DEAN
BUTLER (aka: CLYDEAN BUTLER);
JILL JOHNSTON; JON BAYS;
JAMES E. WALKER; DALE
REIFSCHNEIDER; DUSTIN BAYS;
DAVID MARTIN; SETH MILLS;
LINDA SISCO; MARK S. UKER;
CRISMAN MCSPADDEN;
STEPHANIE HOEPPNER; ROGER
WERRIES; MATT WINNINGHAM;
MIKE MILLER; KJB SECURITY
INTERNATIONAL; KJB SECURITY
PRODUCTS, INC.; RESEARCH
ELECTRONICS, INC.; HUNTER

**FILED UNDER SEAL**

**COMPLAINT**

DEMAND FOR JURY TRIAL

31 U.S.C. §§ 3729–3733
*"False Claims Act"*

18 U.S.C. §§ 1961-1968
*"Civil Racketeer Influenced and
Corrupt Organizations Act"*

15 U.S.C. §§ 1-38
*"Monopolies and Restraint of
Trade"*

22 U.S.C. § 2778
*"Arms Export Control Act"*

22 CFR §§ 120-130
*"International Traffic in Arms
Regulations"*

50 U.S.C. § 2410
*"National Security Controls"*

22 U.S.C. § 401
*"Illegal Exportation of War*

| | |
|---|---|
| COVE LP; "ABSOLUTE SURVEILLANCE;" "1435 JAMESTOWN COURT;" "4751 HUNTER COVE ROAD;" "341.04 ACRES ON HUNTER COVE ROAD;" "458.36 ACRES ON JAMES BROWN ROAD;" "DEANNA MARIE WOLFE;" "800 DRY VALLEY ROAD;" "17 ACRES ON DECK MOUNTAIN ROAD;" "459 HAMPTON CIRCLE;" "TWELVE MILLION (12) MILLION DOLLARS IN RETAINED COMMISSIONS;" "5.19 ACRES, DRY VALLEY ROAD;" "15.8 ACRES ON BURTON BRANCH ROAD (aka;) 2250/2350 BURTON BRANCH ROAD)" "4751 HUNTER COVE ROAD;" "1.41 ACRES ON SECURITY DRIVE;" "2 ACRES ON SECURITY DRIVE;" "2208 BURTON BRANCH ROAD;" "105.43 ACRES ON MUDDY POND ROAD;" "1414 SHAG RAG ROAD;" "SIXTY SEVEN (67) AUDIO EAVESDROPPING DEVICES;" "SIX (6) PHONE SYSTEMS, SWITCH, AND INSTRUMENTS;" "THREE (3) MILLING MACHINES;" "SIX (6) HEWLETT-PACKARD/AGILENT SPECTRUM ANALYZERS;" "THREE SURFACE MOUNT ASSEMBLY MACHINES;" "SEVENTY FIVE (75) THOUSAND POUNDS OF BLUEPRINTS, DRAWINGS, CAD FILES, AND BUSINESS RECORDS;" "FORTY THOUSAND (40,000) POUNDS OF RAW MATERIALS AND WORK-IN-PROGRESS;" "CUSTOMER DATABASE;" "NINE (9) YEARS OF ACCOUNTING | *Material"* |
| | 47 U.S.C. §§ 2.1-1305 *"Telecommunication"* |
| | 18 U.S.C. § 2512 *"Eavesdropping"* |
| | 19 U.S.C. §§ 1709-3808 *"Smuggling"* |
| | 18 U.S.C. § 549 *"Smuggling goods out of the US"* |
| | 18 U.S.C. § 371 *"Conspiracy"* |
| | 18 U.S.C. § 1001 *"False or Fraudulent Statement to Government Agency"* |
| | 18 U.S.C. § 1031 *"Major Fraud Against U.S."* |
| | 18 U.S.C. § 1341 *"Mail Fraud"* |
| | 18 U.S.C. § 1343 *"Wire Fraud"* |
| | 18 U.S.C. § 1956 *"Financial Transactions Involving the Proceeds of Specified Unlawful Activity"* |
| | 18 U.S.C. §§ 1510 – 1513 *"Obstruction of Justice"* |

RECORDS;" "NINETEEN (19) YEARS OF ACCOUNTING RECORDS;" "SIX (6) MILLION DOLLARS IN FINISHED GOODS;" "SOURCE CODE;" "APPROVED OR PENDING PATENTS;" JOHN DOE 001 – 150

Defendants.

**COMPLAINT**

1. The United States of America, by and though *qui tam* Realtor, James M. Atkinson, brings this action under 31 U.S. §§ 3729–3733 "False Claims Act"; 18 U.S.C. §§ 1961-1968 "Civil Racketeer Influenced and Corrupt Organizations Act – RICO;" 15 U.S.C. §§ 1-38, "Monopolies and Restraint of Trade;" 22 U.S.C. 2778, "Arms Export Control Act;" 22 CFR §§ 120-130, "International Traffic in Arms Regulations;" 50 U.S.C. § 2410, "National Security Controls;" 47 U.S.C. §§ 2.1-1305, "Telecommunication;" and 18 U.S.C. § 2512 "Manufacture, distribution, possession, and advertising of wire, oral, or electronic communication intercepting devices;" 22 U.S.C. § 401 "Illegal Exportation of War Material;" 19 U.S.C. §§ 1709-3808, "Smuggling;" 18 U.S.C. § 549, "Smuggling goods out of the US;" 18 U.S.C. § 371, "Conspiracy;" 18 U.S.C. § 1001, "False or Fraudulent Statement to Government Agency;" 18 U.S.C. § 1031, "Major Fraud Against U.S.;" 18 U.S.C. § 1341, "Mail Fraud;" 18 U.S.C. § 1343, "Wire Fraud;" 18 U.S.C. § 1956, "Financial Transactions Involving the Proceeds of Specified Unlawful Activity;" 18 U.S.C. §§ 1510 – 1513, "Obstruction of Justice" to recover from Research Electronics,

82    Tennessee, they also maintained a business operation in Gloucester,

83    MA (by way of the Plaintiff), and in other states.

84

85    ## RELATED CASES

86

87    11. Plaintiff did list Defendants in a civil rights and civil-RICO case in the

88    United States District Court for the District of Massachusetts as case

89    11-CV-11073-NMG, in Boston, MA on June 15, 2011, but did not

90    disclose the full details of this *qui tam* complaint contained herein at

91    that time.

92

93    ## PLAINTIFF

94
95    12. Plaintiff James M. Atkinson is acting on behalf of the United States

96    of America as a *qui tam* Realtor, and "Whistler Blower" in regards to

97    fraudulent and long term organized criminal conduct by the

98    Defendants against the United States and is prosecuting this matter as

99    a "Private Attorney General" *qui tam pro domino rege quam pro se*

100   *ipso in hac parte sequitur.*

101

180    24. Defendant THOMAS H. JONES is sued as an Owner, Engineer, and

181    General Manager for Research Electronics, LLC and as the General

182    Manager, and/or Sales Manager for Research Electronics, Inc.

183    Defendant resides or does business at: 455 Security Place, Algood TN

184    38506.

185

186    **BRUCE BARSUMIAN**

187    25. Defendant BRUCE BARSUMIAN is sued as an Owner and Engineer

188    for Research Electronics, LLC and as the President, Owner and

189    Engineer for Research Electronics, Inc. Defendant resides or does

190    business at: 455 Security Place, Algood TN 38506.

191

192    **A AND L ENTERPRISES**

193    26. Defendant A AND L ENTERPRISES is sued as an enterprise and

194    instrument of illegal or prohibited conduct, the proceeds of a crime,

195    and used to facilitate organized crime and racketeering. Defendant

196    resides or does business at: 455 Security Place, Algood TN 38506.

197

198    **HUNTER COVE, LP**

199    27. Defendant HUNTER COVE, LP is sued as an enterprise and

200    instrument of illegal or prohibited conduct, the proceeds of a crime,

201    and used to facilitate organized crime and racketeering. Defendant

202    was formed on 11/13/2009 as a Limited Partnership in Tennessee.

203    Defendant resides or does business at: 455 Security Place, Algood TN

204    38506.

205

206    **RESEARCH ELECTRONICS, INC.**

207    28. Defendant RESEARCH ELECTRONICS, INC. hereinafter referred to

208    as "Research Electronics" or "REI." Plaintiff is informed and believes

209    that Defendant is also a recipient of federal funds, which it distributes

210    to its various departments and activities.

211

212    29. Defendant RESEARCH ELECTRONICS, INC. and RESEARCH

213    ELECTRONICS INTERNATIONAL, LLC are in fact the same

214    enterprise, and the same continuation of identical criminal conduct,

215    under the same ownership, and operating under the same mode of

216    operation, and thus both companies are in fact the same enterprise and

217    operation. Defendant was incorporated on 02/18/1983 but overlapped

218    and intermingled operations with RESEARCH ELECTRONICS

239  33. Defendant NICOLE RODGERS is a sales person, and exporter,

240  employed by Research Electronics. Defendant resides or does

241  business at: 455 Security Place, Algood TN 38506.

242

243  **DEAN BUTLER**

244  34. Defendant DEAN BUTLER (aka: CLYDEAN BUTLER) is a notary

245  public, officer manager, sales person, and exporter, employed by

246  Research Electronics. Defendant resides or does business at: 455

247  Security Place, Algood TN 38506.

248

249  **TRISH WEBB**

250  35. Defendant TRISH WEBB, is Office Manager, sales person, sales

251  manager, exporter, book keeper, and accountant, employed by

252  Research Electronics. Defendant resides or does business at: 455

253  Security Place, Algood TN 38506.

254

255  **LINDA SISCO**

256  36. Defendant LINDA SISCO, is a sales person, exporter, and purchasing

257  agent, employed by Research Electronics. Defendant resides or does

258  business at: 455 Security Place, Algood TN 38506.

259

## **MIKE MILLER**

261 37. Defendant MIKE MILLER, is an engineer, senior technician,

262    computer programmer, and exporter, employed by Research

263    Electronics. Defendant resides or does business at: 455 Security Place,

264    Algood TN 38506.

265

## **PAMELA MCINTYRE**

267 38. Defendant PAMELA MCINTYRE, is an employee and exporter,

268    employed by Research Electronics. Defendant resides or does

269    business at: 455 Security Place, Algood TN 38506.

270

## **MARK S. UKER**

272 39. Defendant MARK S. UKER, is an employee, instructor and exporter,

273    employed by Research Electronics. Defendant resides or does

274    business at: 455 Security Place, Algood TN 38506.

275

## **CRISMAN MCSPADDEN**

277    40. Defendant CRISMAN MCSPADDEN, is an employee, instructor and

278    exporter, employed by Research Electronics. Defendant resides or

279    does business at: 455 Security Place, Algood TN 38506.

280

281    **STEPHANIE HOEPPNER**

282    41. Defendant STEPHANIE HOEPPNER, is an employee, instructor and

283    exporter, employed by Research Electronics. Defendant resides or

284    does business at: 455 Security Place, Algood TN 38506.

285

286    **ROGER WERRIES**

287    42. Defendant ROGER WERRIES, is an employee, instructor and

288    exporter, employed by Research Electronics. Defendant resides or

289    does business at: 455 Security Place, Algood TN 38506.

290

291    **MATT WINNINGHAM**

292    43. Defendant MATT WINNINGHAM, is an employee, instructor and

293    exporter, employed by Research Electronics. Defendant resides or

294    does business at: 455 Security Place, Algood TN 38506.

295

296

| 297 | **CLARENCE L. JONES, JR** |
| 298 | 44. Defendant CLARENCE L. JONES, JR, is an employee and M.D. |
| 299 | employed by Research Electronics, and involved in the laundering of |
| 300 | funds, financing operations, and the operator of multiple mechanisms |
| 301 | by which Research Electronics engages in illegal operations and |
| 302 | enterprises. Defendant resides or does business at: 455 Security Place, |
| 303 | Algood TN 38506. |
| 304 | |
| 305 | **JAMES E. WALKER** |
| 306 | 45. Defendant JAMES E. WALKER, is Chairmen of the Board, a |
| 307 | consultant, employee, owner, and investor employed by Research |
| 308 | Electronics, and involved in the laundering of funds, financing |
| 309 | operations, and the operator of multiple mechanisms by which |
| 310 | Research Electronics engages in illegal operations and enterprises. |
| 311 | Defendant resides or does business at: 455 Security Place, Algood TN |
| 312 | 38506. |
| 313 | |
| 314 | **KIMBERLY JONES** |
| 315 | 46. Defendant KIMBERLY JONES, is a contractor, and marketing |
| 316 | consultant engaged in the foreign sales of Research Electronics goods. |

317     Defendant resides or does business at: 455 Security Place, Algood TN

318     38506.

319

320     **ARLENE J. BARSUMIAN**

321     47. Defendant ARLENE J. BARSUMIAN (aka: ARLENE WALKER), is

322     an owner of both Research Electronics, A and L Enterprises, and the

323     operator of multiple mechanisms by which Research Electronics

324     engages in illegal operations and enterprises. Defendant resides or

325     does business at: 455 Security Place, Algood TN 38506.

326

327     **LISA JONES**

328     48. Defendant DARLENE JONES (aka: LISA JONES), is an owner of

329     both Research Electronics, A and L Enterprises, Hunter Cove, LP, and

330     the operator of multiple mechanisms by which Research Electronics

331     engages in or engaged in illegal operations and enterprises. Defendant

332     resides or does business at: 455 Security Place, Algood TN 38506.

333

334     **KJB SECURITY INTERNATIONAL**

335     49. Defendant KJB SECURITY INTERNATIONAL, is engaged in the

336     business of wholesale and retail sales of eavesdropping devices, arms,

337    counter-surveillance, and countermeasures equipment to include

338    domestic and international sale and exportation of control munitions,

339    arms, and other prohibited goods.

340

341    50. Defendant was incorporated on 08/09/1999 but overlapped and

342    intermingled operations with KJB SECURITY PRODUCTS, INC.

343    until 02/13/2003, thus forming the two entities into a single seamless

344    entity.

345

346    51. Defendant also overlapped and intermingled operations and control

347    with RESEARCH ELECTRONICS INTERNATIONAL, LLC; and

348    RESEARCH ELECTRONICS, INC prior to 02/13/2003, thus forming

349    the all three entities into a single seamless entity. Defendant resides or

350    does business at: 841-B FESSLERS PKWY, NASHVILLE, TN

351    37210-2923 USA.

352

353    **KJB SECURITY PRODUCTS, INC.**

354    52. Defendant KJB SECURITY PRODUCTS, INC. is engaged in the

355    business of wholesale and retail sales of eavesdropping devices, arms,

356    counter-surveillance, and countermeasures equipment to include

357    domestic and international sale and exportation of control munitions,

358    arms, and other prohibited goods.

359

360    53. Defendant KJB SECURITY INTERNATIONAL and KJB

361    SECURITY PRODUCTS, INC. are in fact the same enterprise, and

362    the same continuation of identical criminal conduct, and operating

363    under the mode of operation, and thus both companies are in fact the

364    same enterprise and operation.

365

366    54. In fact, Defendants KJB SECURITY PRODUCTS, INC., KJB

367    SECURITY INTERNATIONAL; RESEARCH ELECTRONICS

368    INTERNATIONAL, LLC; and RESEARCH ELECTRONICS, INC

369    are also the same organization, operation, and criminal enterprise.

370

371    55. Defendant was incorporated on 06/28/2002 but overlapped and

372    intermingled operations with KJB SECURITY INTERNATIONAL

373    until 02/13/2003, thus forming the two entities into a single seamless

374    entity. Defendant resides or does business at: 841-B FESSLERS

375    PKWY, NASHVILLE, TN 37210-2923 USA.

376

417      International, LLC. Defendant resides or does business at: 841-B

418      FESSLERS PKWY, NASHVILLE, TN 37210-2923 USA.

419

420      **SETH MILLS**

421      62. Defendant SETH MILLS is the Quality Control Supervisor and Lead

422      Technical Support Representative, and exporter for KJB Security

423      Products, Inc.; and Research Electronics International, LLC.

424      Defendant resides or does business at: 841-B FESSLERS PKWY,

425      NASHVILLE, TN 37210-2923 USA.

426

427      **"ABSOLUTE SURVEILLANCE"**

428      63. Defendant ABSOLUTE SURVEILLANCE is engaged in the business

429      of wholesale and retail sales of eavesdropping devices, arms, counter-

430      surveillance, and countermeasures equipment to include domestic and

431      international sale and exportation of control munitions, arms, and

432      other prohibited goods. Defendant resides or does business at: 31566

433      Railroad Canyon Road, Suite 709, Sun City, CA 92587.

434

435      **DEANNA MARIE WOLFE**

436    64. Defendant DEANNA MARIE WOLFE, is the President, exporter,

437         wholesaler and retailer of the goods of KJB Security. Defendant

438         resides or does business at: 31566 Railroad Canyon Road, Suite 709,

439         Sun City, CA 92587.

440

441                          **"459 HAMPTON CIRCLE"**

442    65. Defendant "459 HAMPTON CIRCLE" is parcel "053K F 01773

443         00001066C" in Cookeville, TN, Putnam County, Tennessee.

444         Defendant measures 125.43 x 92.92 feet, and sold on 02/13/1992 to

445         Defendants Bruce and Arlene Barsumian, and used as an instrumental

446         tool of smuggling and of major fraud against the government, and an

447         instrumentality for the crime, and fruit of the crime.

448

449                        **"1435 JAMESTOWN COURT"**

450    66. Defendant "1435 JAMESTOWN COURT" is parcel "041P D 00143

451         00001041P" in Cookeville, TN, Putnam County, Tennessee.

452         Defendant measures 63.30 x 166.33 feet, and sold on 01/07/1999 to

453         Defendants Thomas and Lisa Jones, and used as an instrumental tool

454         of smuggling and of major fraud against the government, and an

455         instrumentality for the crime, and fruit of the crime.

456

457                                    **"800 DRY VALLEY ROAD"**

458        67. Defendant "800 DRY VALLEY ROAD" is parcel "052 01209

459              00001052", in Cookeville, TN, Putnam County, Tennessee. Defendant

460              measures 20.6 Acres, and sold on 04/13/1999 to Defendants Thomas

461              and Lisa Jones, and used as an instrumental tool of smuggling and of

462              major fraud against the government, and an instrumentality for the

463              crime, and fruit of the crime.

464

465                                    **"4751 HUNTER COVE ROAD"**

466        68. Defendant "4751 HUNTER COVE ROAD" is parcel "098 00901 000"

467              in Cookeville, TN, Putnam County, Tennessee. Defendant measures

468              23.92 Acres, and sold on 11/30/2007 to Defendants Thomas H. Jones

469              for $2,300,000, and then subdivided and sold to Hunter Cove, LP

470              (controlled by Lisa Jones, the wife of Thomas H. Jones) for $0, and

471              used as an instrumental tool of smuggling and of major fraud against

472              the government, and an instrumentality for the crime, and fruit of the

473              crime. This Defendant abuts Defendant "341.04 ACRES ON

474              HUNTER COVE ROAD" which abuts Defendant "458.36 ACRES

475              ON JAMES BROWN ROAD" to form a combined parcel of 823.32

| | |
|---|---|
| 476 | Acres, valued in excess of $7.5 million dollars owed by and under the |
| 477 | control of Defendants Thomas H. Jones and Lisa Jones. |
| 478 | |
| 479 | **"341.04 ACRES ON HUNTER COVE ROAD"** |
| 480 | 69.Defendant "341.04 ACRES ON HUNTER COVE ROAD" is parcel |
| 481 | "098 009.00" consisting of 341.04 Acres, and sold on 11/30/2007 to |
| 482 | Defendants Thomas H. Jones for $2,300,000, and then to Hunter Cove, |
| 483 | LP for $0, and used as an instrumental tool of smuggling and of major |
| 484 | fraud against the government, and an instrumentality for the crime, |
| 485 | and fruit of the crime. |
| 486 | |
| 487 | **"458.36 ACRES ON JAMES BROWN ROAD"** |
| 488 | 70.Defendant "458.36 ACRES ON JAMES BROWN ROAD" is parcel |
| 489 | "098 017.00" consisting of 458.36 Acres, and sold on 12/14/2007 to |
| 490 | Defendant Thomas H. Jones for $2,350,000, and then to Hunter Cove, |
| 491 | LP for $0 on 11/10/2009, and used as an instrumental tool of |
| 492 | smuggling and of major fraud against the government, and an |
| 493 | instrumentality for the crime, and fruit of the crime |
| 494 | |
| 495 | |

| 496 | **"17 ACRES, ON DECK MOUNTAIN ROAD"** |
|---|---|
| 497 | 71. Defendant "17 ACRES, ON DECK MOUNTAIN ROAD" is parcel |
| 498 | "041 08500 00019041" ", in Cookeville, TN, Putnam County, |
| 499 | Tennessee. Defendant measures 17 Acres, and sold on 11/13/2001 to |
| 500 | Defendants Thomas and Lisa Jones, and used as an instrumental tool |
| 501 | of smuggling and of major fraud against the government, and an |
| 502 | instrumentality for the crime, and fruit of the crime. This parcel abuts |
| 503 | Defendant "800 DRY VALLEY ROAD" to form a single parcel that |
| 504 | is 37.6 Acres. |
| 505 | |
| 506 | **"2208 BURTON BRANCH ROAD"** |
| 507 | 72. Defendant "2208 BURTON BRANCH ROAD" is an 110x250 foot |
| 508 | parcel, in Algood, TN, Putnam County, Tennessee. Defendant "2208 |
| 509 | BURTON BRANCH ROAD" wad sold on 05/20/2000 and then |
| 510 | resold on 06/22/2000 to Defendant Clarence L. Jones Jr., and used as |
| 511 | an instrumental tool of smuggling and of major fraud against the |
| 512 | government, and an instrumentality for the crime, and fruit of the |
| 513 | crime. |
| 514 | |
| 515 | **"1414 SHAG RAG ROAD"** |

516    73.Defendant "1414 SHAG RAG ROAD" is an 131.6 x 151.6 foot parcel,

517         in Cookeville, TN, Putnam County, Tennessee. Defendant "1414

518         SHAG RAG ROAD" was sold on 03/02/2005 to Jon and Candace

519         Bays, and used as an instrumental tool of smuggling and of major

520         fraud against the government, and an instrumentality for the crime,

521         and fruit of the crime.

522

523                    **"105.43 ACRES ON MUDDY POND ROAD"**

524    74.Defendant "105.43 ACRES ON MUDDY POND ROAD" is parcel

525         "073    00912 00014073", in Algood, TN, Putnam County, Tennessee.

526         Defendant measures 5.19 Acres, and sold on 11/31/2002 to

527         Defendants James E. Walker and used as an instrumental tool of

528         smuggling and of major fraud against the government, and an

529         instrumentality for the crime, and fruit of the crime.

530

531                    **"5.19 ACRES, DRY VALLEY ROAD"**

532    75.Defendant "5.19 ACRES, DRY VALLEY ROAD" is parcel "052

533         01206 00001052", in MONTEREY, TN 38574, Putnam County,

534         Tennessee. Defendant measures 105.43 Acres, and sold on

535         04/21/2003 to Defendants Lisa Jones and used as an instrumental tool

| | |
|---|---|
| 536 | of smuggling and of major fraud against the government, and an |
| 537 | instrumentality for the crime, and fruit of the crime. |
| 538 | |

### "15.8 ACRES ON BURTON BRANCH ROAD"

| | |
|---|---|
| 540 | 76.Defendant "15.8 ACRES ON BURTON BRANCH ROAD (aka: |
| 541 | 2250/2350 BURTON BRANCH ROAD)" is parcel "041 09110 |
| 542 | 00019041", in Algood, TN, Putnam County, Tennessee. Defendant |
| 543 | measures 15.8 Acres, and sold on 08/25/2000 to Defendants Research |
| 544 | Electronics International, LLC the resold on 02/15/2001 to Defendant |
| 545 | A and L Enterprises (owned by Defendants Lisa Jones and Arlene |
| 546 | Barsumian), and then occupied by Research Electronics 05/21/2002, |
| 547 | and used since that time as an instrumental tool of smuggling and of |
| 548 | major fraud against the government, and an instrumentality for the |
| 549 | crime, and fruit of the crime. It should be noted that this is a core |
| 550 | property used as the nexus of the major criminal activities. |
| 551 | |

### "1.41 ACRES ON SECURITY DRIVE"

| | |
|---|---|
| 553 | 77.Defendant "1.41 ACRES ON SECURITY DRIVE" (aka: 455 Security |
| 554 | Place) is parcel "041 08110 00019041", in Algood, TN, Putnam |
| 555 | County, Tennessee. Defendant measures 2 Acres, and sold on |

556     08/25/2000 to Defendants Research Electronics International, LLC the

557     resold on 02/15/2001 to Defendant A and L Enterprises (owned by

558     Defendants Lisa Jones and Arlene Barsumian), and used as an

559     instrumental tool of smuggling and of major fraud against the

560     government, and an instrumentality for the crime, and fruit of the

561     crime. This parcel abuts Defendant "15.8 ACRES ON BURTON

562     BRANCH ROAD."

563

564     **"2 ACRES ON SECURITY DRIVE"**

565     78. Defendant "2 ACRES ON SECURITY DRIVE" is parcel "041 08110

566     00019041", (aka: 125 Security Drive) in Algood, TN, Putnam County,

567     Tennessee. Defendant measures 2 Acres, and sold on 08/25/2000 to

568     Defendants Research Electronics International, LLC the resold on

569     02/15/2001 to Defendant A and L Enterprises (owned by Defendants

570     Lisa Jones and Arlene Barsumian), and used as an instrumental tool of

571     smuggling and of major fraud against the government, and an

572     instrumentality for the crime, and fruit of the crime. This parcel abuts

573     Defendant "15.8 ACRES ON BURTON BRANCH ROAD."

574

575     **"EAVESDROPPING DEVICES"**

---

| | |
|---|---|
| 576 | 79.Defendant "SIXTY SEVEN (67) AUDIO EAVESDROPPING |
| 577 | DEVICES." Defendant is an instrumental tool of criminal activity of |
| 578 | major fraud against the government, and an instrumentality for the |
| 579 | crime, and fruit of the crime. |
| 580 | |
| 581 | **"TWELVE MILLION (12) MILLION DOLLARS"** |
| 582 | 80.Defendant "TWELVE MILLION (12) MILLION DOLLARS IN |
| 583 | RETAINED COMMISSIONS" held by Defendant Research |
| 584 | Electronics International, L.L.C. and payable to Plaintiff James M. |
| 585 | Atkinson and Granite Island Group as withheld commissions, and |
| 586 | improperly invested by the Defendants into real estates, machinery |
| 587 | and facility of REI, and to the development of new products instead of |
| 588 | being paid to the Plaintiff. This conversion of the Plaintiff James M. |
| 589 | Atkinson commissions, is a scheme to defraud as a predicate RICO |
| 590 | offense. Without these embezzled funds, Defendant would not have |
| 591 | been able to design, prototype or build the TALAN, OSCOR Blue, |
| 592 | OSCOR Green, CPM-700 Deluxe, CMA-100, or OSCOR-5000 |
| 593 | version 5.0. Hence, these products were designed with stolen funds, |
| 594 | and thus the products design themselves and the instruments or |
| 595 | machines used to build them are fruits of the crime. |

596

**"PHONE SYSTEMS"**

597

598    81. Defendant "SIX (6) PHONE SYSTEMS, SWITCH, AND

599        INSTRUMENTS" are five (5) PBX systems or switches used in the

600        training labs, and one (1) PBX systems with voice mail, and used as

601        an instrumental tool of eavesdropping, smuggling, and of major fraud

602        against the government, and an instrumentality for the crime, and fruit

603        of the crime.

604

**"MILLING MACHINES"**

605

606    82. "THREE (3) MILLING MACHINES," and used as an instrumental

607        tool of smuggling, and of major fraud against the government, and an

608        instrumentality for the crime, and fruit of the crime.

609

**"SPECTRUM ANALYZERS"**

610

611    83. Defendant "SIX (6) HEWLETT-PACKARD/AGILENT SPECTRUM

612        ANALYZERS," and used as an instrumental tool of smuggling, and

613        of major fraud against the government, and an instrumentality for the

614        crime, and fruit of the crime.

615

| 616 | **"SURFACE MOUNT MACHINES"** |
| 617 | 84. Defendant "THREE (3) SURFACE MOUNT ASSEMBLY |
| 618 | MACHINES," and used as an instrumental tool of smuggling, and of |
| 619 | major fraud against the government, and an instrumentality for the |
| 620 | crime, and fruit of the crime. |
| 621 | |
| 622 | **"TECHNICAL AND BUSINESS RECORDS"** |
| 623 | 85. Defendant "SEVENTY FIVE (75) THOUSAND POUNDS OF |
| 624 | BLUEPRINTS, DRAWINGS, CAD FILES, AND BUSINESS |
| 625 | RECORDS," and used as an instrumental tool of smuggling, and of |
| 626 | major fraud against the government, and an instrumentality for the |
| 627 | crime, and fruit of the crime. |
| 628 | |
| 629 | **"RAW MATERIALS"** |
| 630 | 86. Defendant "FORTY THOUSAND (40,000) POUNDS OF RAW |
| 631 | MATERIALS AND WORK-IN-PROGRESS," and used as an |
| 632 | instrumental tool of smuggling, and of major fraud against the |
| 633 | government, and an instrumentality for the crime, and fruit of the |
| 634 | crime. |
| 635 | |

| 636 | **"CUSTOMER DATABASE"** |
| 637 | 87. Defendant "CUSTOMER DATABASE" and used as an instrumental |
| 638 | tool of smuggling, and of major fraud against the government. |
| 639 | |
| 640 | **"ACCOUNTING RECORDS (2002 to Present)"** |
| 641 | 88. Defendant "NINE (9) YEARS OF ACCOUNTING RECORDS," and |
| 642 | used as an instrumental tool of smuggling, and of major fraud against |
| 643 | the government, and an instrumentality for the crime, and fruit of the |
| 644 | crime. |
| 645 | |
| 646 | **"ACCOUNTING RECORDS (1983 to 2002)** |
| 647 | 89. Defendant "NINETEEN (19) YEARS OF ACCOUNTING |
| 648 | RECORDS," and used as an instrumental tool of smuggling, and of |
| 649 | major fraud against the government, and an instrumentality for the |
| 650 | crime, and fruit of the crime. |
| 651 | |
| 652 | **"FINISHED GOODS"** |
| 653 | 90. Defendant "SIX (6) MILLION DOLLARS IN FINISHED GOODS," |
| 654 | and used as an instrumental tool of smuggling, and of major fraud |

655 against the government, and an instrumentality for the crime, and fruit

656 of the crime.

657

658         **"SOURCE CODE"**

659 91. Defendant "SOURCE CODE," and used as an instrumental tool of

660 smuggling, and of major fraud against the government, and an

661 instrumentality for the crime, and fruit of the crime.

662

663         **"PATENTS"**

664 92. Defendant "APPROVED OR PENDING PATENTS," and used as an

665 instrumental tool of smuggling, and of major fraud against the

666 government, and an instrumentality for the crime, and fruit of the

667 crime.

668

669       **"JOHN DOE 001 – 150"**

670 93. Defendant JOHN DOE 001 – 150 is sued in capacity as an Employee

671 for Research Electronics, LLC.; Research Electronics, Inc.; KJB

672 Security International, KJB Security Products, Inc.; or A and L

673 Enterprises.

674

675    **<u>FACTS</u>**

676

677    94. Realtor Atkinson is a well-known writer, author, publisher, and public

678         speaker in regards to TSCM, TEMPEST, technical security matters,

679         technical surveillance or eavesdropping countermeasures or

680         protections, and in intelligence analysis.

681

682    95. In May 1983, Plaintiff began publishing unclassified professional

683         papers in regards to TSCM and related topics by way of a

684         Computerized Bulletin Board System, which he designed and

685         programmed, and also by way of conventional print media.

686

687    96. In August 1987, Plaintiff converted many of these computer files into

688         a format which was suitable for placement on various academic

689         computer servers which Plaintiff had access to as either a student,

690         teacher, lecturer, or other legitimate user.

691

692    97. In 1992, the Plaintiff registered the domain name of TSCM.COM and

693         moved the previously mentioned files to a single commercial server,

694         and began adding computer programs which the Plaintiff wrote,

695  databases, photographs, images, and graphics to the previously text

696  only files. This domain name was used as the basis of what would

697  become the Plaintiff's website at: http://www.tscm.com/

698

699 98.From 1992 until 1995, the Plaintiff slowly built up the files, added

700  graphics into the website, to include thousands of text files, and it

701  became, and remains the most comprehensive website on the Internet

702  on the subject matter.

703

704 99.When the "Internet was borne" the Plaintiff already had a mature, and

705  established presence by way of his website, so when established

706  TSCM people who had never dealt with the Plaintiff before "got

707  online" for their first time and began to explore the Internet, they

708  discovered the massive amount of published materials by the Plaintiff.

709  This did create a problem, as several people "wrote books" whereby

710  they merely plagiarized hundreds of pages off the Plaintiff's website,

711  and fraudulently published it as their own writings.

712

713 100.  Plaintiff began dealing the Defendant Research Electronics and

714  Defendant Barsumian in approximate late Fall of 1981 as a retail

| 715 | customer of the company purchasing products for use in the |
|---|---|
| 716 | performance of TSCM services and bug sweeps. At that time, |
| 717 | Defendant Barsumian operated the company in the form of "Research |
| 718 | Electronics, Inc" and alternately under the name of "Security |
| 719 | Research International" with an address in and near the Tampa, |
| 720 | Florida area. At the time, the Defendant stated that he was in the |
| 721 | profession of performing TSCM (bug sweeping) services as well as |
| 722 | the profession of making bugging devices and TSCM equipment. |
| 723 | |
| 724 | 101.    In 1983, (by his own admission) Defendant Barsumian suffered |
| 725 | a catastrophic financial collapse of his business in Florida, and moved |
| 726 | to Tennessee to be supported by his wife's parents. At that time the |
| 727 | Defendant produced only the most primitive of TSCM and counter- |
| 728 | surveillance products, and the quality was grossly inferior to those |
| 729 | produced by the competitors of the Defendant. |
| 730 | |
| 731 | 102.    In the April 1988, the Plaintiff discovered that the Defendant |
| 732 | was not operating in Tennessee after moving from Florida and |
| 733 | contacted the Defendant in order to arrange for a visit in the Fall of |
| 734 | 1988 while the Plaintiff would be working at a project in Oak Ridge, |

| | |
|---|---|
| 735 | Tennessee. Defendant at this time disclosed to the Plaintiff that his |
| 736 | business had collapsed, and that his father-in-law had to rent a U-Haul |
| 737 | truck to move him and his wife from Florida to Tennessee and that he |
| 738 | and his father-in-law had restarted the "Research Electronics" |
| 739 | company, but was not longer operating the under the "Security |
| 740 | Research" company name. At that time the Defendant disclosed to the |
| 741 | Plaintiff that the Defendant was wholly unable to perform a TSCM |
| 742 | inspection or bug sweep and stated to the Plaintiff that he "would be |
| 743 | restricting his activities to the making of bug sweep devices, not of |
| 744 | rendering TSCM service, as he discovered too late that he was no |
| 745 | good at it (bug sweeps), and that it was at the center of his bankruptcy |
| 746 | problems". |
| 747 | |
| 748 | 103. In the late Fall of 1988, the Plaintiff visited the Defendants |
| 749 | factory in or near Cookeville, TN in order to purchase a new model of |
| 750 | device which the Defendant had described to him and was marketing |
| 751 | to replace the inferior quality equipment previously purchased by the |
| 752 | Plaintiff from the Defendant in 1983. While the product still |
| 753 | performed inferior to that built by competitors, it was an improvement |
| 754 | on the product purchased roughly five years previously. During this |

755    visit, the Defendant quizzed the Plaintiff in regards to the "other
756    equipment" the Plaintiff was using to perform TSCM services for
757    clients, and the Plaintiff agreed to demonstrate several items, which
758    the Plaintiff had designed and built for his own use to provide TSCM
759    services. Among the items demonstrated was a silver Halliburton
760    briefcase into which the Plaintiff had built a computer controlled
761    receiver, with a swing out panel that positioned the antennas and
762    receivers well away from the computer so that it did not pickup
763    electrical noise from the computer, and the small chart plotter which
764    was also built into the case. The Plaintiff also demonstrated an
765    sophisticated antenna system, whereby the antennas, filters, and
766    preamplifiers were built into the "swing out wings" that would
767    normally hold screwdriver blades. The Plaintiff discovered to some
768    horror in 1990, that the Defendant actually took the Plaintiff design,
769    claimed it as his own, and fraudulently filed a patent for it mere weeks
770    after the demonstration by the Plaintiff.
771
772    104.    In approximately 1992, Defendant again began dealing with
773    Plaintiff, and through Plaintiff's web site allowed an Internet presence
774    (www.tscm.com) in which Plaintiff provided detailed descriptions,

775    photographs, etc. of Defendants products as well as other

776    manufacturers of such equipment to the TSCM, Intelligence, and

777    private sector communities.

778

779    105.    At that time, the Defendant lacked any kind of a website, lacked

780    any sort of on-line representation of its products, lacked even

781    primitive E-Mail system of their own, and lacked the technical ability

782    to provide same.

783

784    106.    As the relationship developed between the parties, in

785    approximately 1995, Plaintiff began buying and reselling Defendants

786    products under a non written agreement in which Plaintiff received a

787    31.5% discount on all of Defendants products purchased and was free

788    to sell at whatever price Plaintiff desired. Plaintiff did however; refuse

789    to have anything at all to do with the illegal bugging devices, which

790    the Defendant was offering for sale.

791

792    107.    Pursuant to this non written agreement, Plaintiff's sold

793    Defendants products to the United States Government, the U.S.

794    Government Intelligence community, including the Central

| 795 | Intelligence Agency, the Federal Bureau of Investigation, the U.S. |
| 796 | Department of State, Secret Service, Department of Energy, Army, |
| 797 | Navy, Air Force, Marine Corps, Defense Contractors, Research and |
| 798 | Development Companies, Think Tanks, Lockheed Martin, Harvard, |
| 799 | Raytheon Corporation, Mitre Corporation, Lawrence Livermore Labs, |
| 800 | Lincoln Labs, Sandia Labs, the Royal Canadian Mounted Police, and |
| 801 | others. |
| 802 | |
| 803 | 108.    During this same period, Defendant introduced a product |
| 804 | known as the "OSCOR" which is an Omni Spectral Correlator, Model |
| 805 | 5000 or OSC-5000. Plaintiff took an OSCOR, designed and modified |
| 806 | Defendants unit, and thereafter showed it to Defendant suggesting the |
| 807 | modification be made to make it more saleable to U.S. Government |
| 808 | entities. Defendant implemented Plaintiff's designs and modifications. |
| 809 | |
| 810 | 109.    In 1995, the Defendant contacted the Plaintiff by phone and |
| 811 | asked Plaintiff if he had any suggestion on how to resolve a technical |
| 812 | issue in raising the frequency coverage of the OSC-5000 product, |
| 813 | which the Plaintiff had successfully performed on other similar |
| 814 | systems for defense contractors. The Plaintiff described to the |

815    Defendant a very simple, and inexpensive design which he had used

816    in the past on other equipment whereby the local oscillator of the

817    OSC-5000 could be used to drive a simple microwave down convertor

818    that was attached to an 18 GHz AEL blade style log periodic antenna

819    that was commercially available. Further, the Plaintiff cautioned the

820    Defendant that the product would not be taken seriously by the TSCM

821    community unless it could cover up to 40 GHz or above, which would

822    require the use of three antennas, each with a slightly different

823    downconvertor, and some kind of switching circuit.

824

825    110.    In approximately 1999, Defendant made additional

826    modifications to the OSCOR and increased the price. Plaintiff, an

827    authority in TSCM, continued to purchase and resell Defendants

828    products and gave individual discounts to other practitioners in the

829    TSCM field while maintaining normal pricing structure for non-

830    TSCM professionals. Because of Plaintiff's professional courtesy,

831    Defendant became upset and expressed its upset with Plaintiff;

832    however, the relationship continued.

833

834    111.    In December of 1999, the Defendant requested the assistance of

835         the Plaintiff and attempted to use the Plaintiff to contact the

836         manufacture of a CODEC (digital coding and decoding) system which

837         the Defendant had seen the Plaintiff used to examine digital phone

838         systems during TSCM inspections. The Defendant sought to develop

839         an eavesdropping device based on the CODEC system, which the

840         Plaintiff refused to assist in, or to have anything to do with in any way.

841         The Plaintiff did demonstrate to the Defendant how to instead utilize

842         near-end and far-end cross talk analysis to locate eavesdropping

843         devices, but refused to assist the Defendant in eavesdropping methods

844         or equipment development which they were seeking.

845

846    112.    Defendant restructured the company in 2000 and in the

847         following year, Defendant confected a Manufacturer's Representative

848         Contract in which Defendant now claimed that all government sales

849         were "in house" clients of Defendant. Plaintiff discussed the improper

850         and unethical wholesale blanket of "in house" contained in the

851         agreement with Defendant Tom Jones (Thomas H. Jones), a managing

852         member of Defendant, informed Plaintiff that if he didn't agree

853         Defendant would severe all ties with Plaintiff and he would be

854    prohibited from any further purchases. In short, Defendant informed

855    Plaintiff he could "take it or leave it" with respect to that provision

856    and every other provision of the contract.

857

858    113.    Defendant issued similar "MREP" contracts to others, with a

859    "take it of leave it" position, in furtherance of a restraint of trade,

860    price fixing of goods sold to the U.S. Government, and monopolistic

861    business practices.

862

863    114.    In addition, during visits made almost yearly after that point,

864    Defendant maintained a huge inventory of illegal bugging devices (i.e.

865    devices designed primarily for the unlawful and surreptitious

866    interception of wire and/or oral communications), which is a felony to

867    possess, and which the Plaintiff personally examined, and in some

868    cases covertly and/or overtly photographed. Defendant repeatedly

869    solicited Plaintiff to purchase and deal in these illicit eavesdropping

870    devices from them, but Plaintiff strongly refused. Further, Defendant

871    repeatedly illegally bugged and eavesdropped upon Plaintiff during

872    his visits in contravention of applicable State laws of the State of

873    Tennessee and Federal law.

874

875    115.    During the Plaintiff visits to the Defendants business location in

876    1999, 2005, and in 2007, Plaintiff photographed these illegal bugging

877    devices, which drastically upset the Defendants as they stated that

878    were concerned the they could get into trouble if the photographs

879    were ever published, put on the Internet, or provided to the authorities.

880

881    116.    Beginning in 2001, Defendant entered into a manufacturer's

882    representative agreement, which continued until October of 2010. A

883    review of the terms and conditions imposed by Plaintiff pursuant to its

884    inclusion of adhesion clauses in said contract required to be executed

885    by Defendant on a "take it or leave it" basis is illustrative. For

886    example, Defendant required Plaintiff to agree, "In the event of any

887    dispute or controversy regarding whether a commission is due,

888    Plaintiff "will have full authority and final discretion regarding same.

889    REI's decision regarding the payment or non payment will not be

890    appeal able (sic) or actionable even if it is arbitrary, unreasonable, and

891    or motivated by REI's self interest." In addition, Defendants provided

892    the following: "REI may freely solicit any customer directly, even in

893    competition with the MREP and no liability will be incurred to the

894    MREP." After 2006, annual renewals were signed but Defendant

895    retained all copies refusing to send copies to representatives who

896    executed same, even after multiple requests to be provided copies.

897

898    117.    Defendant required that Plaintiff provide it with a Pending

899    Order Form on all sales of Plaintiff pursuant to the Manufacturer's

900    Representative Contract. In approximately 2004, Plaintiff discovered

901    that on orders he had made with third parties, Defendant was under

902    reporting commissions due to Plaintiff. Further, Defendant restricted

903    Plaintiff's ability to provide Pending Order Forms limiting him to

904    only ten (10) per month since Plaintiff was submitting more than any

905    other dealer in the United States (i.e. approximately 250 per month) as

906    a result of him selling more product then any other venue outside of

907    the Defendants business.

908

909    118.    It was more profitable for the Plaintiff to have the goods drop

910    shipped to the end customer or end user, so that shipping charges were

911    not being paid twice by the Plaintiff. Thus, the Plaintiff in 1997

912    requested drop shipments for all shipments (domestic or export) on a

913    regular basis, unless the good were to be used for the training of